UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

BRIAN TOBOYEK,

    Plaintiff,

    v.                                             Case No. 2:22-cv-00786-PP

WISCONSIN PUBLIC SERVICE CORPORATION,

WEC ENERGY GROUP INC.,

and

RYAN SOLLBERGER
Individually and as agent for
Wisconsin Public Service Corporation,

    Defendants.

## AMENDED COMPLAINT

NOW COMES the Plaintiff, Brian Toboyek, through his counsel, Alan C. Olson & Associates, S.C., as and for an Amended Complaint against the above-named Defendants, Wisconsin Public Service Corporation, WEC Energy Group, and Ryan Sollberger, alleges as follows:

**NATURE OF THE CASE**

1. Plaintiff, Brian Toboyek, alleges that Defendants, Wisconsin Public Service Corporation ("WPS"), WEC Energy Group ("WEC"), and Ryan Sollberger, unlawfully invaded Toboyek's privacy by publicly sharing Toboyek's confidential health information to all of WEC and WPS's 8,000 employees without his knowledge or

consent. Defendants' actions were in violation of Wis. Stat. § 995.50, which prohibits the unauthorized public disclosure of private health information, and the Family and Medical Leave Act, 29 U.S.C.§§ 2601–2654, which provides a right of privacy for information used to obtain medical leave.

## JURISDICTION AND VENUE

2. Jurisdiction over Toboyek's FMLA claim is conferred on this Court by 28 U.S.C. § 1331.

3. Jurisdiction over Toboyek's state law claims is conferred on this Court by 28 U.S.C. § 1367.

4. The Eastern District of Wisconsin is the proper venue for this action because both WPS and WEC's principal office is located in Milwaukee County and all Defendants reside in Wisconsin.

## CONDITIONS PRECEDENT

5. All conditions precedent to this action have been performed or have otherwise occurred.

## JURY DEMAND

6. Toboyek demands that his case be tried to a jury of his peers.

## PARTIES

7. Plaintiff Toboyek is an adult who resides at 207400 County Road X, Mosinee, WI 54455.

8. Defendant, WEC is a corporation organized and existing under the laws of the State of Wisconsin, with its principal office located at 231 W. Michigan Street,

Milwaukee, WI 53203, and its registered agent being Corporate Creations Network, Inc., located at 4650 W. Spencer Street, Appleton, WI 54914-9106.

9. Defendant, WPS is a corporation organized and existing under the laws of the State of Wisconsin as a wholly owned subsidiary of Defendant WEC Energy Group, with its principal office located at 231 W. Michigan Street, Milwaukee, WI 53203, and its registered agent being Corporate Creations Network, Inc., located at 4650 W. Spencer Street, Appleton, WI 54914-9106.

10. Defendant, Ryan Sollberger is a WEC employee who resides at 7409 Wall Street, Schofield WI 54476.

**OPERATIVE FACTS**

11. On or about January 6, 2006, Toboyek commenced his employment with Defendant, WPS, and ultimately held the position of control operator at the Weston Power Plant, located at 2499 Old Hwy 51, Kronenwetter, WI 54455.

12. Due to COVID-19, WPS implemented a mandatory mask policy that required employees to wear a mask or face-covering while working inside a company facility.

13. Toboyek frequently observed his co-workers without masks in the company facility in violation of the mandatory mask policy.

14. Toboyek repeatedly reported his concerns that employees were not complying with the mandatory mask policy to his manager, Len Rentmeester, but no remedial action was taken.

15. On or about December 11, 2021, Toboyek's co-worker, Kennie Lambert, entered the elevator without a mask.

3

16. Toboyek requested Lambert to wear a mask and Lambert refused.

17. Within a few hours that day, Lambert tested positive for COVID-19 and was sent home.

18. On or about December 15, 2021, Toboyek contacted WPS' Vice President, Paul Spicer, to convey his concerns about the constant violations of the mandatory mask policy at the Weston Power Plant.

19. Spicer responded that he would talk to Rentmeester about WPS' expectation that the mandatory mask policy would be enforced.

20. There was no improvement in the enforcement of the mask policy.

21. Toboyek suffered emotionally and physically from constant fear that he would be infected with the COVID-19 virus due to WPS' failure to enforce its mandatory mask policy.

22. On or about December 19, 2021, Toboyek saw that Lambert was back at work only eight days after he was tested positive for COVID-19.

23. On December 20, 2021, Toboyek was instructed by his healthcare provider to take a medical leave from work from December 23, 2021 through January 20, 2022, due to his emotional and physical suffering related to WPS' failure to enforce its mandatory mask policy.

24. On December 20, 2021, Toboyek talked to the WPS designated medical professional, Belinda Hall-Graves, about his request for medical leave.

25. Toboyek was seeking FMLA protected medical leave because of his doctor's concerns about his exposure to COVID-19 and the effect of potential exposure on his mental health.

26. During this conversation, Toboyek disclosed his health history to demonstrate the necessity of his medical leave.

27. Hall-Graves created a record and/or document of this medical history, which was required to be kept confidential under the FMLA.

28. Toboyek discussed his health concerns with Hall-Graves, disclosing information that was protected under Wis. Stat. § 146.82 which protect an individual's private health information.

29. Toboyek shared private information relating to his mental health, the circumstances which required him to take medical leave, and concerns about COVID-19.

30. Defendants failed to keep this information confidential as required by 29 C.F.R. § 825.500(g).

31. Hall-Graves transmitted this information to Sollberger.

32. Toboyek never consented or gave any permission for Defendants to release or disclose his private medical information.

33. Toboyek shared information related to his mental health, substance use, medications, and the fact that he was seeking counseling, all of which are subjects which, if publicized, would be offensive to a reasonable person.

34. There was no legitimate public interest in this obviously private information.

35. When Toboyek returned from his medical leave on January 21, 2022, he was told by his co-workers that his medical information had been circulated on a printed document and was uploaded on the company intranet, accessible to all WEC and WPS employees.

36. Upon information and belief, Sollberger publicized the medical history related to Toboyek's request for leave.

37. Defendants not only failed to keep Toboyek's medical history confidential—Defendants WEC and WPS published the information to all WEC and WPS employees in flagrant violation of the FMLA.

38. This information was not publicized accidentally but was instead intentionally published in a manner intended for the public on the company intranet.

39. After Toboyek's return from medical leave, he was constantly asked by his coworkers about his emotional and physical ailments.

40. Toboyek was told that he put his job in jeopardy by disclosing his health conditions to WPS.

41. On February 3, 2022, Toboyek received a screenshot of the intranet as well as a print-out of that intranet from his colleagues which described Toboyek's medical leave discussion with Hall-Graves regarding his concerns about mask policy violations and his mental health and stress.

42. Toboyek was shocked, outraged and mortified to learn that his confidential and private medical information had been released by WEC, WPS, and Sollberger to approximately 8,000 WEC and WPS employees and many others.

43. To publicize such obviously private information in such a public manner required an unreasonable or reckless disregard of Toboyek's privacy rights.

44. The publicity given to Toboyek's medical information was highly offensive to Toboyek.

45. Prior to Defendants' unauthorized publication of Toboyek's medical information, the information was in no way public or a matter of public record. While Toboyek shared some of his concerns with his supervisors, he only shared the details of his mental health issues with Hall-Graves because it was required for his medical leave.

46. On February 3, 2022, Toboyek was placed on a medical leave due to anxiety and high blood pressure resulting from the disclosure of his private and confidential medical information by Sollberger, WEC, and WPS.

47. WEC, WPS, and Sollberger's disclosure of Toboyek's private and confidential medical information violated Wisconsin's right of privacy statute's clear prophylactic intent, designated not only to redress harm but to alter societal behavior that, as a matter of public policy, is deemed unacceptable.

48. The disclosure and discussion of Toboyek's private and confidential medical information violated the Wisconsin right of privacy statute's aim to affect the behavior of individuals to encourage respect for personal dignity and basic rights.

49. The disclosure and discussion of Toboyek's private medical information violated his "right to be let alone" protected by Wisconsin's right of privacy statute.

50. The actions of WEC, WPS, and Sollberger violated Toboyek's fundamental right to privacy under Wis. Stat. § 146.82 and Wis. Stat. § 995.50(2)(am)3 which protect against publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person.

51. Toboyek brings this action to restore his personal dignity or reputation, and to prevent future invasions.

52. Toboyek brings this action for equitable relief to prevent and restrain such invasion, and reasonable amount for attorney fees.

53. WEC, WPS, and Sollberger, acting unreasonably or recklessly as to whether there was a legitimate public interest in Toboyek's private and confidential medical information, or with actual knowledge that none existed, gave publicity to a matter concerning the private life of Toboyek, of a kind highly offensive to a reasonable person in the intrusive and reckless manner.

54. Sollberger acted individually and within the scope of his agency with WEC when he violated Toboyek's privacy in the intrusive and reckless manner in which he disclosed Toboyek's private and confidential medical information.

55. WEC is vicariously liable under the doctrine of *respondeat superior* for the intentional torts committed by Sollberger in violating Toboyek's privacy.

56. Defendants' conduct violated Toboyek's fundamental right to privacy and caused harm to the personal and professional reputation of Toboyek, so as to lower him in the estimation of the community; caused him to incur expenses, and suffer emotional distress, mental anguish, stress, and humiliation, all to his damage.

57. The intrusive and reckless manner in which WEC, WPS, and Sollberger disclosed and uploaded, on WPS and WEC's intranet available to all of its employees, Toboyek's private and confidential medical information was substantially certain to become one of public knowledge.

58. Toboyek is subject to a collective bargaining agreement, but the plain language of that agreement does not relate to Toboyek's claims.

## FIRST CLAIM FOR RELIEF
## WIS. STAT. § 995.50 INVASION OF PRIVACY

59. As and for a claim for relief, Toboyek re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

60. The allegations more particularly described above constitute violations of Wis. Stat. § 995.50(2)(am)3 by the publicity given by Defendants to Toboyek's private life of a nature highly offensive to a reasonable person.

61. Defendants acted both unreasonably and recklessly in disclosing Toboyek's private medical information, as there was plainly no legitimate public interest in disclosing information that is protected by both state and federal law.

62. Toboyek had a reasonable right to be free from unlawful and unreasonable intrusions upon his privacy.

63. Said unlawful invasion of privacy constituted actions in disregard to the privacy rights of Toboyek relating to his right to be free from unlawful intrusions upon a place that a reasonable person would consider private, in violation of Wis. Stat. § 995.50(2)(am)3, causing Toboyek to suffer invasion of his privacy, emotional distress, mental anguish, stress, humiliation and harm to reputation and livelihood, all to his damage.

## SECOND CLAIM FOR RELIEF
## DENIAL OF FMLA RIGHT TO PRIVACY

64. As and for a second claim for relief, Toboyek re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

65. The allegations more particularly described above constitute violations of 29 C.F.R. § 825.500(g) by failing to keep confidential medical histories created for the purpose of obtaining FMLA-protected leave.

66. Said failure to keep Toboyek's medical information confidential constituted actions in disregard to the privacy rights of Toboyek under the FMLA, causing Toboyek to suffer invasion of his privacy, emotional distress, mental anguish, stress, humiliation and harm to reputation and livelihood, all to his damage.

### THIRD CLAIM FOR RELIEF
### WEC'S NEGLIGENT TRAINING AND SUPERVISION OF SOLLBERGER

67. As and for a third claim for relief, Toboyek re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

68. WEC breached its duties to use ordinary care in training and supervising Sollberger.

69. WEC should have trained Sollberger to not disclose private and confidential medical information to over 8,000 employees.

70. WEC acknowledged that Sollberger had made an error, and that he would be provided with training to prevent the error in the future. By stating that Sollberger's training would prevent future errors, WEC acknowledged that WEC could have trained Sollberger in a way which prevented harm to Toboyek.

71. WEC's failure to sufficiently train Sollberger before giving him access to confidential medical information created an unreasonable risk of harm.

72. WEC knew or should have known that not providing Sollberger with such training created an unreasonable risk that private and confidential medical information would be publicly disclosed.

73. WEC, even without intending to do harm, trained and supervised Sollberger in a manner that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property from the agent's conduct, and Toboyek was harmed as a result of that negligence.

WHEREFORE Plaintiff, Brian Toboyek, demands relief as follows:

A. Joint and Several judgments against Defendants awarding Toboyek compensatory damages based on his loss, pursuant to Wis. Stat. § 995.50(1)(b), 29 U.S.C. § 2617(a)(1)(A) and common law;

B. Joint and Several judgments against Defendants awarding Toboyek punitive damages deemed sufficient to punish and deter the Defendants from engaging in said tortious conduct now and in the future, pursuant to Wis. Stat. § 995.50(4) and common law;

C. Joint and Several judgments against Defendants awarding Toboyek a reasonable attorney's fee and other litigation costs reasonably incurred, pursuant to Wis. Stat. § 995.50(1)(c) and 29 U.S.C. § 2617(a)(3);

D. Joint and Several judgments against Defendants awarding Toboyek an additional amount as liquidated damages equal to the sum of damages and interest pursuant to 29 U.S.C. § 2617;

E. Joint and Several judgments against Defendants awarding Toboyek damages for emotional pain, suffering, humiliation, embarrassment, and mental anguish, pursuant to Wis. Stat. § 995.50 and common law; and,

F. Such other relief as the Court deems just and equitable.

Dated this 25th day of August, 2022.

s/ Nicholas O. Yurk
Alan C. Olson, SBN: 1008953
Nicholas O. Yurk, SBN: 1095278
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: NYurk@Employee-Advocates.com